UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cr-40009-JES-JAG |
| ) | |
| ARTHUR LEE RUPERT, III, ) | |
| ) | |
| Defendant. ) | |

# ORDER AND OPINION

This matter is now before the Court on Defendant Rupert's Motions (Docs. 59, 63) to Reduce Sentence Pursuant to 18 U.S.C. § 3582, the United States' Response (Doc. 64), and Defendant's Reply (Doc. 65). For the reasons that follow, Defendant's Motions (Docs. 59, 63) to Reduce Sentence Pursuant to 18 U.S.C. § 3582 are GRANTED.

## BACKGROUND

In November of 2012, Defendant Rupert was sentenced to 156 months of imprisonment for conspiring to distribute crack cocaine. He is serving his sentence at FCI Elkton in Lisbon, Ohio. His projected release date is August 11, 2021. In light of the ongoing COVID-19 pandemic, Defendant moves for an order reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), often referred to as the compassionate release statute. Doc. 63. The United States responded to Defendant's Motion by asserting Defendant failed to exhaust administrative remedies and further opposes the request on the merits. Doc. 64.

Defendant is a 42-year-old African American male with either diabetes or prediabetes. Doc. 65, at 2. It does not appear he requires medication to manage his diabetes. *See generally* Doc. 67.

1

At FCI Elkton, Defendant's institution, there are currently 119 inmates and 8 staff with known active cases of COVID-19; 9 inmates have died, 83 inmates have recovered, and 44 staff have recovered. *See* COVID-19 Coronavirus, BOP, https://www.bop.gov/coronavirus/ (last visited May 21, 2020) (scroll down to the COVID-19 Cases section, then click on "Full breakdown and additional details").

## LEGAL STANDARD

"[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified in only certain enumerated circumstances. 18 U.S.C. § 3582(b). As relevant here:

> [a] court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that (i) extraordinary and compelling reasons warrant such a reduction

and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *cf. United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## DISCUSSION

Defendant contends that he should be released pursuant to § 3582(c)(1)(A)(i) because he faces a high risk of death or serious injury from COVID-19, FCI Elkton has been unable to control the outbreak at its facilities, and the BOP and FCI Elkton officals have been unwilling to

take other actions within its control to reduce the prison population at FCI Elkton. Doc. 63, at 1, 12 Additionally, Defendant argues his conviction was for a nonviolent drug offense and he has already been incarcerated for a significant portion of his sentence. If released, the Probation Office has identified Rupert's brother's residence as suitable. Doc. 62.

**Exhaustion**

Section 3582(c)(1)(A) contains an exhaustion requirement: before a defendant can bring his own motion, he must ask the warden of his facility to bring such a motion. If 30 days pass without a response, he can file a motion in court. *Id*.

Defendant has sought compassionate release through the BOP on April 18, 2020. Doc. 64-2. The warden denied his request on April 27, 2020. More than 30 days have elapsed since his request was filed.

The United States argues Defendant failed to exhaust his administrative remedies because he filed his motion shortly after requesting compassionate release through the BOP, rather than waiting 30 days. Doc. 64, at 21.  The United States argues Defendant Rupert's early filing precludes him from seeking relief in this Court. *Id*. The Court disagrees. A prisoner need not fully exhaust his administrative remedies prior to filing a compassionate release motion, and any issue with the 30-day waiting period in § 3582(c)(1)(A) is now moot, as 30 days have elapsed since the filing of Defendant's request for compassionate release through the BOP. *See United States v. Coles*, 2020 WL 1976296 at *2 (C.D. Ill. 2020). Even if Defendant did not fully comply with the exhaustion requirement, the Court would nevertheless excuse the failure in this case given the emergency nature of the request and Defendant's substantial compliance with the exhaustion requirements.

**Merits**

Defendant argues that he has shown that extraordinary and compelling reasons warrant his release because he is at risk of contracting the virus and BOP has been unable to control the conditions at FCI Elkton. Doc. 62, at 12. The United States argues that Defendant does not qualify for compassionate release because he has failed to show extraordinary and compelling circumstances justifying his release. Doc. 64, at 21–22.

The compassionate release statute directs the Court to make three considerations: 1) whether extraordinary and compelling reasons warrant a sentence reduction; 2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and 3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

The Sentencing Guideline's policy statement defines what constitutes extraordinary and compelling reasons that warrant a sentence reduction. *See* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). Application notes explain that the medical condition of the defendant (i.e., if he suffers from a terminal illness or a serious physical or medical condition that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"), his age (i.e., if he is 65 and declining in health and has served a large portion of his sentence already), or his family circumstance (i.e., if the caregiver for his minor children dies or becomes incapacitated) can constitute extraordinary and compelling reasons warranting release. *Id.* § 1B1.13 cmt. n.1(A)–(C).

Previously § 3582(c)(1)(A) allowed only the BOP to bring a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 2, 2002 through Dec. 20, 2018). The

Sentencing Commission has not updated its policy statement to reflect that a defendant can make his own motion for a sentencing reduction. Some courts have held that this means there is currently no policy statement with which sentencing reductions under § 3582(c)(1)(A) must be consistent. *See, e.g.*, *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020). This Court has previously adopted this approach. *See United States v. Seggebruch*, No. 15-cr-20034, ECF Doc. 113 (C.D. Ill. May 15, 2020); *United States v. Brooks*, No. 07-20047, ECF Doc. 67 (C.D. Ill. May 15, 2020). Thus, a court may find that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C), and without the BOP's motion or express finding. *See, e.g.*, *Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493 at *6.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, No. 12-cr-20050, at ECF Doc. 41 at p. 5 (C.D. Ill. May 12, 2020).Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Here, the Court believes Defendant has met his burden to establish that extraordinary and compelling reasons justify his release from prison. The Court's finding in this regard is based primarily in the conditions specific to FCI Elkton. First, FCI Elkton is facing a serious outbreak of COVID-19 infections. As the Court previously found, over 50% of the inmates at Elkton who had been tested were positive for the virus. *See United States v. Seggebruch*, No. 15-cr-20034, ECF Doc. 113 at 10 (C.D. Ill. May 15, 2020); *United States v. Brooks*, No. 07-20047, ECF Doc.

67 (C.D. Ill. May 15, 2020). At that time, the Court noted that, "[g]iven the woefully insufficient amount of testing at FCI Elkton as of this date, it is likely the number of infected inmates is underreported." *Id*.

Second, FCI Elkton has been unable or unwilling to meaningfully address the COVID-19 outbreak at FCI Elkton. This conclusion is apparent from a review of *Wilson v. Williams*, No. 4:20-cv-00794 (N.D. Ohio 2020). As Judge Gwin recently remarked in granting preliminary injunctions and motions to enforce them, "Respondents have made limited efforts to reduce COVID-19 risks for subclass members within the prison." *Id*., ECF Doc. 85, at 2. Promises to rapidly test the remaining population have been broken. *Id*. As of May 19, only 524 of the 2,357 inmates at FCI Elkton have been tested, and testing is limited to Mondays and Tuesdays. *Id*. Over 25% of inmates who have been tested were positive for COVID-19, an "unacceptable number." *Id*. Even more concerning is FCI Elkton's refusal to transfer prisoners outside of Elkton in meaningful numbers despite a court order directing them to do so. *Id*. at 4 (noting that, out of 837 inmates especially vulnerable to COVID-19, 5 have been placed on home confinement and six were identified as possibly qualifying for home confinement, no furlough transfers have been granted).

The United States argues Congress did not intend for the First Step Act to allow district courts throughout the country to "micro-manage the appropriate BOP response to the pandemic for each and every one of the BOP's 170,435 inmates." Doc. 64, at 22. The United States further notes that the BOP has more options at its disposal to address the pandemic than the courts, as the courts are limited to granting reductions in sentences while the BOP can furlough inmates, place them on home confinement, or transfer them to other institutions. *Id*. As a general matter, the United States is absolutely correct. However, given the BOP and FCI Elkton's abdication of

their responsibility to protect the inmates at FCI Elkton, judicial intervention is required for inmates at that institution. The fact that the BOP and FCI Elkton have less drastic measures at their disposal yet refuse to use them, even in the face of a preliminary injunction from a federal court within its jurisdiction, further supports the Court's finding in this regard. Both the conditions at FCI Elkton and the BOP's response are unacceptable.

Finally, Defendant has diabetes, a condition recognized by the CDC as a risk factor for suffering severe reactions from COVID-19. Doc. 65, at 2. Although it appears Defendant's diabetes is well managed, given the increased risk of Defendant Rupert suffering from complications from COVID-19, together with the conditions at FCI Elkton and the BOP's failure to meaningfully respond to those conditions, the Court finds Defendant has shown extraordinary and compelling reasons justifying his early release.

In addition, the Court finds the § 3553(a) factors support Defendant's early release in this case. Defendant Rupert has been incarcerated for over 9 years. He is due to be released in August of 2021. While he has a lengthy criminal history and several disciplinary infractions in the BOP, the first concern is mitigated by the length of time Defendant has been incarcerated. With respect to the disciplinary infractions, although Defendant's recent fight is an area of concern to the Court, the remaining infractions, mostly for possession of contraband, do not. Further, concerns about Defendant reoffending can be addressed by careful supervision from his probation officer. Finally, as Defendant acknowledges, concerns for public safety due to Defendant's possible exposure to COVID-19 can be resolved by imposing a term of home confinement.

## CONCLUSION

For the reasons set forth above, Defendant's Motions (Docs. 59, 63) to Reduce Sentence Pursuant to 18 U.S.C. § 3582 are GRANTED.

It is FURTHER ORDERED that:

1. The BOP shall IMMEDIATELY place Defendant Rupert in isolation or quarantine for a period not to exceed 14 days;

2. Thereafter, the BOP shall release Defendant Rupert from FCI Elkton without further delay;

3. Defendant's term of supervised release shall begin immediately upon his release and shall include a period of home confinement for 90 days;

4. Defendant shall be monitored by location monitoring, GPS monitoring, or telephonic monitoring as approved by the U.S. Probation Office; and

5. Defendant is required to contact the probation office in the district where he was released within 48 hours of his release. This District's probation office has indicated that Defendant's brother's residence in Chicago is suitable. Thus, Defendant's home confinement will be served at that location.

Signed on this 21st day of May, 2020.

James E. Shadid  
James E. Shadid  
United States District Judge